```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| EINHORN, Administrator of the TEAMSTERS PENSION FUN OF PHILADELPHIA & VICINITY,<br><br>       Plaintiff,<br><br>   v.<br><br>KALECK BROTHERS, INC.,<br><br>       Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 08-5307 (JEI)<br><br>**OPINION**<br>(DKT No. 14 & 18) |

**APPEARANCE:**

Jo Bennett, Esq.
Frank C. Sabatino, Esq.
STEVENS & LEE
1818 Market Street, 29th Floor
Philadelphia, PA 19103
        Counsel for Plaintiff.

Melvin C. McDowell, Esq.
Kenneth Federman, Esq.
ROTHBERG & FEDERMAN, P.C.
3101 Hulmeville Road
Suite 200
Bensalem, PA 19020
        Counsel for Defendant.


**IRENAS**, Senior District Judge:


     Before this Court is Plaintiff's motion for summary judgment

and Defendant's cross motion for summary judgment. For the

1

reasons set forth below, this Court shall grant Plaintiff's motion and deny Defendant's motion.[1]

                                I.

Plaintiff, William J. Einhorn ("Einhorn") is the Administrator of the Teamsters Pension Fund of Philadelphia & the Vicinity (the "Fund").  Einhorn contends Defendant, Kaleck Brothers, Inc. ("Kaleck Brothers") is liable for withdrawal liability, assessed against it by the Fund in 2006.  This withdrawal liability was assessed in accordance with the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), a statutory amendment to the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 *et seq.*.  Plaintiff filed this complaint in October 27, 2008, asking for $40,337.33 in withdrawal liability, plus prejudgment interest, liquidated damages, attorneys fees and costs.

Defendant, a produce seller, was party to a series of collective bargaining agreements ("CBAs") with Local 929, three of whose members Kaleck Brothers employed.  The CBAs required Kaleck Brothers to make monthly contributions to the Fund on behalf of its employees.  As of August 31, 2006, Kaleck Brothers no longer had any employees who performed work covered by the

---

[1] The Court has jurisdiction over this matter pursuant to the Multiemployer Pension Plan Amendment Act, 29 U.S.C. § 1451(b) and Employee Retirement Income Security Act, 29 U.S.C. §§ 1132(e)(2) and 1145.

operative collective bargaining agreement.[2]  With the departures of the union employees, Kaleck Brothers ceased contributing to the fund.  As a result, the Fund determined Kaleck Brothers had completely withdrawn from the Fund within the meaning of 29 U.S.C. § 1383.[3]  Per the statutory requirements, the Fund notified Kaleck Brothers on July 31, 2007, that its withdrawal liability had been assessed at $40,337.33 with the first installment due September 29, 2007.[4]  Plaintiff's Statement of

---

[2] Plaintiff contends all union employees were terminated. (Pl. Br., 2).  Defendant states that of the three union workers employed by Kaleck Brothers, one died, one left to go to another job and the third left due to a disability.  As a result of the economic downturn, Kaleck Brothers decided not to immediately rehire new workers and instead staffed its business themselves. Deposition of Brian Kaleck, 17-19, Def. Resp. Brief, Exhibit 1.

[3] 29 U.S.C. § 1383. Complete Withdrawal

(a) Determinative Factors: For purposes of this part, a complete withdrawal from a multiemployer plan occurs when an employer–
    (1) permanently ceases to have an obligation to contribute under the plan, or
    (2) permanently ceases all covered operations under the plan.

[4] Under the MPPAA, "[t]he act requires a plan's trustees to determine initially whether a withdrawal has occurred. 29 U.S.C. §§ 1382(1), 1399(b)(1)(A)(I).  When the trustees conclude that a withdrawal has taken place, they must then notify the employer of the amount of liability and demand payment in accordance with an amortization schedule. . . . Thereafter, the employer may within 90 days ask the trustees to conduct a reasonable 'review' of the computed liability . . . . . If a dispute remains, either party may initiate arbitration proceedings.  MPPAA provides

Material Facts ("SMF") ¶ 5.  Included in this letter, were specifics regarding the administrative remedies required under MPPAA as well as a copy of the Fund's rules governing these administrative remedies. SMF Ex. B-1.

Kaleck Brothers neither responded to this notice nor made the first scheduled payment.  On October 17, 2007, the Fund sent a letter to Kaleck Brothers reminding it of its overdue payment and warning of the consequences of default under the MPPAA.  SMF ¶ 6.  Kaleck Brothers responded on October 26, protesting the Fund's determination that it had completely withdrawn and requesting review of the assessment of withdrawal liability in accordance with the MPPAA. SMF ¶ 7.  This letter also informed the Fund that on October 22, 2007, Kaleck Brothers hired a union employee and would begin to making contributions to the Fund on his behalf as required by the CBA. SMF Ex. B-2.  Defendant suggested to Plaintiff that "[p]erhaps this event moots the necessity of the Fund making a claim for the Withdrawal Liability." *Id.*

The Fund denied Kaleck Brothers' request for review on

---

> that 'any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of . . . title [29] shall be resolved through arbitration.'"

*Flying Tiger Line v. Teamsters Pension Tr. Fund,* 830 F.2d 1241, 1244 (3d Cir. 1987).  After the arbitration process is complete, either party may bring an action in federal court to enforce, vacate or modify the arbitrator's order. *Id.*

November 28, 2007 and issued another letter to Defendant warning that if a default occurred, the Fund would pursue all available remedies.  SMF ¶ 8.  In this letter, the Fund addressed Kaleck Brother's October 22 hire and suggests that "[w]hether new contributions tendered . . . will suffice to abate your client's withdrawal liability would depend on . . . 29 U.S.C. § 1387, its regulations and supplemental case law."  Kaleck Brothers did not pursue any course of action with regards to abeyance nor did it initiate arbitration within the allotted time frame established under the MPPAA (by January 28, 2008) and as such, Plaintiff contends, Defendant waived all administrative remedies (including any argument regarding abeyance) to challenge the assessment of withdrawal liability.[5]

It was only after Plaintiff initiated this law suit, on October 27, 2008, that Kaleck Brothers filed a Demand for

---

[5] § 1401. Resolution of disputes:

(a) Arbitration proceedings; matters subject to arbitration, procedures applicable, etc.

> (1) Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period after the earlier of
>
> > (A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or
> >
> > (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title.

5

arbitration with the American Arbitration Association on February 5, 2009.  SMF at ¶ 12.  The Arbitrator assigned questioned her jurisdiction and postponed the arbitration, pending a decision by this Court as to the timeliness of Kaleck Brother's arbitration demand. SMF ¶ 13. Ex. C-2.

Plaintiff's main contention is that Defendant waived any administrative remedies by missing the deadline for arbitration and therefore is statutorily required to pay the withdrawal liability as assessed.  Defendant argues the arbitration deadline should be equitably tolled, because it only waived its administrative remedies as a result of a conversation allegedly had between Brian Kaleck (co-owner of Kaleck Brothers) and a trustee of the Fund who assured him Kaleck Brothers just had to hire another union member and then would not face withdrawal liability.  Defendant claims that reliance on this conversation was the reason for its waiver of administrative remedies and therefore, Defendant's time limit for initiating arbitration should be equitably tolled.

In its cross motion for summary judgment, Defendant contends first and foremost that the Fund's assessment of Defendant's actions as a complete withdrawal is legally incorrect.  Second, Defendant questions the legal merit of the MPPAA's administrative remedies in general as a legal matter of separation of powers and finally as a policy matter.

6

II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56©). "A fact is material if under the governing substantive law, a dispute about it might affect the outcome of the suit." *Waste Mgmt. of P.A., Inc. v. Shinn*, 938 F. Supp. 1243, 1251 (D.N.J. 1996) (internal citation omitted). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). However, "[t]he mere existence of some alleged factual dispute does not necessarily preclude summary judgment, but a motion therefor should only be granted if a reasonable factfinder could only find for the moving party." *Doherty v. Teamsters Pension Trust Fund*, 16 F.3d 1386, 1389 (3d Cir. 1994).

"The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. When ruling on cross-motions for summary judgment, the court must consider the motions independently, and view the evidence on each motion in the light most favorable to the party opposing the

motion." *Clevenger v. First Option Health Plan of New Jersey*, 208 F. Supp. 2d 463, 468-69 (D.N.J. 2002) (internal citations omitted).

### III.

The Multiemployer Pension Plan Amendments Act (MPPAA) was enacted out of concern that ERISA did not adequately protect multiemployer pensions from the adverse consequences that occurred when employers withdrew their participation. *Supervalu, Inc. v. Bd. of Tr. of the Southwestern Pennsylvania and Western Maryland Area Teamsters and Employers Pension and Fund,* 500 F.3d 334, 336 (3d Cir. 2007). To better protect the employee pensions, "Section 4201 [of the MPPAA] provides that a withdrawing employer is liable for its share of the plan's unfunded vested benefits. 29 U.S.C. § 1381(a). It is the duty of the pension plan to determine whether withdrawal liability has occurred and in what amount." *Id.* at 337.

Arbitration is a critical element of the MPPAA. "Provision for the quick and informal resolution of withdrawal liability disputes are an integral part of the MPPAA's statutory scheme." *Flying Tiger Line v. Teamsters Pension Tr. Fund,* 830 F.2d 1241, 1244 (3d Cir. 1987). "The arbitration requirement is an important component of MPPAA's scheme to secure the financial health of multiemployer pension plans." *Id.* In the Third Circuit, "even

pure issues of statutory interpretation are subject to MPPAA's arbitration requirements if they involve sections 1381-1399." *Crown Cork & Seal Co., Inc. v. Central States Southeast and Southwest Areas Pension Fund*, 881 F.2d 11, 18 (3d Cir. 1989).

A.

This Court will evaluate each motion for summary judgment separately, beginning with the Plaintiff's. Plaintiff contends Defendant waived its administrative remedies and is statutorily obligated to pay the Fund its assessed withdrawal liability. Under § 1401(b)(1), the MPPAA clearly states that

> [i]f no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 13999(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." "The Third Circuit has repeatedly held that, an employer will waive its statutory rights to dispute aspects of the Fund's liability determination where arbitration is not demanded within the time period prescribed by the statute.

*Einhorn v. J & S, Inc.*, 577 F. Supp. 2d 752, 762 (D.N.J. 2008) (S.J. Irenas)(internal quotations omitted).[6]

Under the MPPAA, "[a]rbitration may be initiated by either

---

[6] In fact, "the Sixth Circuit concluded that, '[u]nless an employer is mounting a facial constitutional attack or making a verifiable claim of irreparable injury, the courts have *no jurisdiction* to entertain the merits of the dispute prior to arbitrarion.'" *Flying Tiger Line*, 830 F.2d at 1249 (quoting *Marvin Hayes Lines, Inc. v. Central States, Southeast & Southwest Areas Pension Fund*, 814 F.2d 297, 300 (6th Cir. 1987) (emphasis added)).

party, although it must be done within sixty days from either" (1) the date of notification to the employer of the Fund's determination upon request for review or (2) one hundred twenty days from the date the employer requests review initially. *Id.* at 760. The Kaleck Brothers had from November 28, 2007 (when the Fund notified it of its decision to deny the Defendant's request for review) until January 28, 2008 (60 days) to initiate arbitration. It did not. As a result, Defendant waived its right to dispute the assessment.

In response, Defendant contends the deadline for arbitration should be equitably tolled because Plaintiff actively misled Defendant into thinking that arbitration would not be necessary if another union employee was hired. Defendant refers to oral communications with Paul Cardullo (a trustee of the Fund) as the alleged cause for Defendant to "reasonably believe that there was no need to take legal action to defend against withdrawal liability if another union employee was hired." Def. Br. In Opp., 2.

It is evident from Brian Kaleck's deposition that he was not certain that Mr. Cardullo was speaking on behalf of the fund. Furthermore, it was only after extremely suggestive questioning by defense counsel that Brian Kaleck changed his testimony to

reflect Defendant' current argument.[7] As stated above, "[t]he mere existence of some alleged factual dispute does not necessarily preclude summary judgment, but a motion therefor should only be granted if a reasonable factfinder could only find for the moving party." *Doherty,* at 1389.

Regardless of these factual inconsistencies in Brian Kaleck's deposition, taking Defendant's allegations as true (as required under the summary judgment standard), this conversation still does not rise to the level required to equitably toll the time limit for arbitration. Equitable tolling of the MPPAA deadline for initiating arbitration "may be appropriate at least where the defendant has actively mislead the plaintiff respecting the cause of action, the plaintiff has in some extraordinary way

---

[7] Deposition of Brian Kaleck, Defendant's Response to Plaintiff's Statement of Material Facts, Ex. 4, p.46

    Q. Did you believe that Paul Cardullo could speak on behalf of the Pension as well as the union? . . .

    A. No.

    Q. I will ask again only because it seems at odds with prior answers. At the time when you spoke to Paul Cardullo, did you have an understanding that he had absolutely no authority to speak on behalf of the Pension Fund? . . .

    A. No, I thought he could , yeah. . . .

    Q. Mr. Kaleck, as a result of your conversations with Paul Cardullo, did you believe that Kaleck Brothers had to take legal action to fight this withdraw liability?

    A. No.

11

been prevented from asserting his rights, or the plaintiff has raised the precise statutory claim in issue, but has mistakenly done so in the wrong forum." *Id.* at 1393 (internal quotations omitted).

Defendant contends the first hypothetical reason for equitable tolling is applicable here: that the defendant actively misled the plaintiff respecting the cause of action, although in this case, it contends Defendant was actively misled by the Plaintiff.  The precise contours of the allegedly misleading conversation are not clear. Cardullo is not deposed and as stated above, Brian Kaleck is not clear in his recollection of the conversation, or the date upon which it occurred. In fact, at repeated times throughout his deposition, Kaleck clearly stated no in response to the question of whether he had "ever had any discussions with Mr. Cardullo about the withdrawal liability demanded by the Pension Fund." Pl. Reply. Br., 2 (quoting Depo. of Brian Kaleck at 32-33).

Nor does the Defendant's argument make logical sense.  Why would the Kaleck Brothers, after communicating formally with the Fund (requesting a review of the amount of withdrawal liability, etc. via its attorney), rely on the alleged communications of a trustee of the Fund in an informal oral conversation to ensure it no longer had to worry about compliance with the MPPAA's administrative remedies?  As mentioned before, Cardullo is not

deposed (at least not that the Court is aware of), and based on Brian Kaleck's contradictory deposition, there is little factual information about the content of the supposed conversation.

Furthermore, in its letter of November 28, 2007, the Fund specifically addresses the hiring of another union member but still indicates it will pursue its assessment of withdrawal liability from Kaleck Brothers regardless of the hire. In other words, Defendant was clearly informed that the hiring of a union member would *not* remedy the issue of withdrawal liability with ample time to still initiate arbitration within the statutory deadline.[8] Defendant does not address this issue in its briefs even though it is evident from the Fund's communications that the hiring of another union employee did not change Defendant's responsibility to initiate arbitration under MPPAA.

Defendant points to *Dougherty* as support for equitable tolling in this case, but the factual circumstances in *Dougherty* are inapposite here. In *Dougherty*, the Third Circuit raised the possibility that the serious and debilitating illness of the

---

[8] As stated above, Brian Kaleck is unclear as to when the alleged conversations with Mr. Cardullo took place. However, he generally places the conversations as having occurred in 2006. Depo. Of Brian Kaleck, 15, 22, 40, 47. He twice mentions that the conversations with Mr. Cardullo occurred "probably 62006 [sic] into 2007." *Id.* at 32, 48. There is no reliable evidence, even when taking Kaleck's deposition as true, that these conversations took place after the Fund sent its letter of November 28, 2007, specifically rejecting the possibility that another union hire would alter the assessment of withdrawal liability.

13

defense attorney could be adequate reasoning for equitable tolling. *Dougherty*, 16 F.3d at 1394. However, the Third Circuit left the final determination as to whether equitable tolling was appropriate to the district court on remand. *Id.* There is little to connect the Third Circuit's reasoning to the case before this Court besides the basic issue of equitable tolling.

Even when viewing the facts in the light most favorable to the non-moving party (Defendant), this Court is still of the mind that Plaintiff is correct in its assertion that "failure to arbitrate under MPPAA waives a defense to withdrawal to liability." Pl. Reply Br., 6. Furthermore, Defendant's contention that it relied on statements made in bad faith when deciding to waive its arbitration rights does not hold water, factually or legally. As such, this Court will grant the Plaintiff's motion for summary judgment.

Under 29 U.S. § 1451(b), an action to collect withdrawal liability is "treated in the same manner as a suit for delinquent contributions" under ERISA, 29 U.S.C. § 1145. Therefore, the Fund should also be awarded interest on the unpaid amount, liquidation damages and attorney's fees and costs. 29 U.S.C. § 1132(g), made applicable to MPPAA by 29 U.S.C. §§ 1451(b) and 1145; *Penn Elastic Co. v. United Retail & Wholesale Employees Union Local 115 Joint Pension Plan*, 792 F.2d 45, 48 (3d Cir. 1986).

14

B.

Defendant's cross-motion for summary judgment is premised on the argument that the Fund wrongly determined Kaleck Brothers permanently withdrawn from having an obligation to contribute to the plan. Defendant contends Plaintiff made a legal error in finding its' fourteen-month cessation of payments to be sufficient evidence of complete withdrawal. Further, Defendant argues that even if it had initiated arbitration in the required time period, allowing the arbitrator to determine the definition of the word "permanent" is a violation of the separation of powers doctrine. This is a matter of statutory interpretation, a pure legal question and therefore, Defendant claims, it is not barred from raising this contention by the exhaustion doctrine. Def. Reply Br., I.

MPPAA clearly indicates it is the Fund's responsibility to make a determination whether a withdrawal has occurred. "The procedure set forth in the MPPAA for the determination of withdrawal liability commences with the trustees' determination that a withdrawal has in fact occurred. (Half the trustees are named by the employer, and half by the union.)" *Warner-Lambert, Co. v. United Retail & Wholesale Employee's Teamster Local No. 115 Pension Plan,* 791 F.2d 283, 284 (3d Cir. 1986). One of the definitions of complete withdrawal in the MPPAA is when the employer "permanently ceases to have an obligation to contribute

15

under the plan." 29 U.S.C. § 1383 The Fund determined, as is its responsibility under the statute, that Kaleck Brothers had ceased to have an obligation to contribute under the plan because it no longer employed union workers. Nothing about this determination is illogical or in conflict with the statutory language.

Furthermore, if there is a conflict about whether complete withdrawal has occurred, in the Third Circuit, "whether an entity has ceased to be an employer within the meaning of MPPAA . . . must be resolved in arbitration." *Galagay v. Beaverbrook Coal Co.,* 105 F.3d 137, 141 (3d Cir. 1997). Defendant offers no legal authority which would abrogate the right of the Fund to make a determination as to whether an employer permanently withdraws or which would allow this Court to determine an issue which must be resolved in arbitration.

Even the Defendant's contention, that the definition of "permanent" is a pure legal question and therefore presentable to the Court, regardless of the exhaustion doctrine, is not supported by Third Circuit case law; in fact, just the opposite. The Defendant is correct that it is a general legal principle that "the requirements of the exhaustion doctrine are also not applicable where the question is solely one of statutory interpretation." *Flying Tiger Line,* 830 F.2d at 1253 (internal quotations omitted). Yet, the Third Circuit specifically

16

designated statutory interpretations of MPPAA "that Congress explicitly reserved for arbitration" as subject to arbitration regardless of whether or not it is a pure legal question. *Id.* at 1254.

Finally, raising a facial challenge to the statute, Defendant attacks the constitutionality of the MPPAA, arguing that to allow a arbitrator to interpret a statute of the United States (and determine the correct meaning of "permanent") would defeat separation of powers principles. Def. Br. In Opp., 10. Yet, as indicated by the procedural posture of this case, an arbitrator never even issued an opinion on the withdrawal liability determination, much less interpreted the statute. As the Third Circuit wisely noted "constitutional issues should not be decided and legislation should not be invalidated, if a controversy may be resolved on some other ground." *Babcock and Wilcox Co. v. Marshall*, 610 F.2d 1128, 1137 (3d Cir. 1979). Heeding this advice, the Court need not reach Defendant's facial challenge because it waived its right to its administrative remedies and therefore did not reach arbitration. The exhaustion of administrative remedies is required by MPPAA. Defendants failed to exhaust their remedies. Therefore, whether the arbitrator would have attempted to interpret statutory language is impossible to predict. The Court denies the Defendant's cross motion for summary judgment.

17

IV.

For the reasons stated above, Plaintiff's motion for summary judgment will be granted and Defendant's cross motion for summary judgment will be denied.  The Court will issue an appropriate order.

Date: May 17th, 2010

                                  s/ Joseph E. Irenas

                                  JOSEPH E. IRENAS, S.U.S.D.J.